**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 11-60294-CIV-HUCK/BANDSTRA**

ORIOLE GARDENS CONDOMINIUMS,
III,

      Plaintiff,

v.

INDEPENDENCE CASUALTY AND
SURETY COMPANY, a foreign
corporation,

      Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;**
**ORDER DENYING DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY**
**JUDGMENT**

      THIS MATTER is before the Court on Defendant, Independence Casualty and Surety Company's ("Independence") Motion for Summary Judgment (D.E. # 57) and Supplemental Motion for Summary Judgment (D.E. # 90), filed respectively on December 20, 2011 and January 27, 2012. In its motions, Independence argues that Plaintiff, Oriole Gardens Condominiums, III ("Oriole Gardens") is barred from recovering insurance proceeds for hurricane damage because (1) Oriole Gardens failed to comply with its numerous post-loss obligations, (2) certain claims are excluded from coverage, and (3) the applicable statute of limitations time-bars the instant action. For the reasons discussed below and stated in open court, the Court denies the Motion for Summary Judgment, and denies the Supplemental Motion for Summary Judgment.

**I.    RELEVANT FACTS[1]**

---

[1] Oriole Gardens included a short section of disputed facts in its Response to the Motion for Summary Judgment (D.E. # 75), but did not submit a statement of material facts as required by Local Rule 56.1(a). Pursuant to Local Rule 56.1(b), "a[ll] material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is

1

On February 15, 2005, Oriole Gardens purchased a "wind/hail" insurance policy, No. HHO2164359 ("the Policy"), from Independence that provided coverage from February 9, 2005 to February 9, 2006.  After suffering damage from Hurricane Wilma on October 24, 2005, Oriole Gardens submitted a claim to Independence under the Policy.  Upon receiving notice of the claim on November 14, 2005, Independence assigned third-party administrator, Mathis & Company, to inspect the property and assess damages.  Mathis & Company determined that the damage to the property fell below the Policy's deductible, and on December 9, 2005 informed Oriole Gardens that no payment would be forthcoming.

Four years later, on December 3, 2009, Oriole Gardens, through its public adjuster, Able Adjusting, Inc., notified Independence that it wished to reopen the claim, and submitted a revised sworn proof of loss for $6,592,532.49.  Independence rejected the revised proof of loss as premature, opting to initiate a post-loss claim investigation.  Independence requested that Oriole Gardens comply with several of its post-loss obligations under the Policy, including submitting to an examination under oath ("EUO"), and furnishing all documents in its possession relating to fifty separate areas of inquiry.

On July 1, 2010, two Able Adjusting appraisers submitted to EUOs, and Oriole Gardens requested that Independence participate in the appraisal process as provided for by the Policy.  Either party can make a written demand to commence the appraisal process, whereby each party chooses an appraiser, both of whom then select a neutral umpire.  Each appraiser independently evaluates the property and then submits an estimate of the damage.  Any difference in the two estimates is then resolved by the umpire, whose final determination becomes binding on both parties.

The following day, July 2, 2010, Oriole Gardens submitted a second revised sworn proof of loss, through Able Adjusting, for $14,013,236.37.[2]  Oriole Gardens also submitted numerous documents to Independence.  Independence rejected the appraisal request on July 9, 2010,

---

supported by evidence in the record."  S.D. Fla. R. 56.1(b).  Oriole Gardens did, however, include such a statement in its Response to the Supplemental Motion for Summary Judgment (D.E. # 104).

[2] It is noted that, since this action was filed, this loss figure was again adjusted by Oriole Gardens' expert Rommel Este to $8,246,729.91 in late 2011.  *See* Este Estimate (D.E. # 64-4), at 2; Este Depo. (D.E. # 84-1), at 70.

asserting that it was premature because Oriole Gardens had yet to fully comply with its post-loss obligations.

Oriole Gardens' current Board President David Wagoner submitted to an EUO on August 4, 2010.   Although acknowledging that it conducted three EUOs and received numerous documents, Independence requested additional EUOs and documentation because Mr. Wagoner did not possess certain knowledge regarding the claim, and because not all requested documentation had been received.   In the extensive exchange of correspondence between Independence and Oriole Gardens, Independence, on numerous occasions, stated that Oriole Gardens "has failed to comply with its post-loss obligations."  *See, e.g.,* July 9, 2010 Letter (D.E. # 65-14), at 1; Nov. 3, 2010 Letter (D.E. # 56-19), at 9.  Moreover, the correspondence indicates that Independence's evaluation of the claim was open and ongoing.  For example, Independence informed Oriole Gardens, on numerous occasions, that it was "unable to accept or reject [Oriole Gardens'] proof of loss as [Independence's] investigation of this claim is ongoing. . . . Please be advised that [Independence] is most anxious to complete its inquiry and investigation of this claim.   However, there is additional information that is relevant and necessary to [Independence's] review and investigation of this claim and to allow it to fully evaluate and determine its obligations under the policy of insurance.  It is absolutely necessary that you timely respond and comply with the post-loss contractual obligations . . . to allow this claim to be resolved and concluded in a timely manner.  July 19, 2010 Letter (D.E. # 56-17), at 7; Oct. 5, 2010 Letter (D.E. # 56-18), at 7; Nov. 3, 2010 Letter, at 9.

On January 10, 2011, Independence informed Oriole Gardens that it was standing by its initial 2005 claim determination that the amount of loss fell below the Policy's deductible. Independence stated its decision was based on the following factors: (1) the scope of repairs in Able Adjustors' estimate exceeded the wind damage in Independence's initial claim inspection, (2) Oriole Gardens failed to provide a knowledgeable person for an EUO, (3) Oriole Gardens failed to produce numerous documents, and (4) Independence's recent inspection of the property and determination that Oriole Gardens sustained no additional damages to those observed in the original 2005 cost estimate.

Oriole Gardens commenced the instant action in Florida state court on January 10, 2011, which was removed to this Court on February 9, 2011.  The Second Amended Complaint (D.E. # 88) alleges one count of breach of contract against Independence.  Specifically, Oriole Gardens

contends that Independence breached the Policy by failing to: (1) comply with the Policy's appraisal clause, (2) acknowledge or deny that further payment would be forthcoming, and (3) make payments due under the Policy.  2d Am. Compl., ¶¶ 19, 25.

On December 20, 2011, Independence filed a Motion for Summary Judgment on Oriole Gardens' breach of contract claim.  Independence filed a Supplemental Motion for Summary Judgment on January 27, 2012.  In its motions, Independence argues that it is entitled to summary judgment on several of its affirmative defenses, namely: (1) Oriole Gardens did not comply with its post-loss obligations to submit to an EUO, provide relevant documents, and give prompt notice of the loss, (2) Oriole Gardens' claim includes damage items that are specifically excluded from coverage, and (3) the applicable statute of limitations bars the instant action.

The Court held a hearing on the motions on February 29, 2012.  At the hearing, the Court made several findings of fact and conclusions of law after conducting an extensive review of the record.  First, the Court held that questions of fact exist as to whether Oriole Gardens complied with its post-loss obligations to submit to an EUO, produce and disclose documents, and provide prompt notice of loss.  Second, the Court held that summary judgment was inappropriate to resolve coverage issues relating to specific items of damage, and instructed the parties to confer in an attempt to resolve them, and to file appropriate motions *in limine* to address any unresolved issues.  Third, the Court held that the statute of limitations does not bar the present action.  For the reasons stated in open court and discussed below, Independence's Motion for Summary Judgment is denied, and Supplemental Motion for Summary Judgment is denied.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, and affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue is "material" if it is a legal element of the claim under applicable substantive law, and might affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  An issue of fact is "genuine" if a rational trier of fact may find for the non-moving party based on the record taken as a whole.  *Allen*, 121 F.3d at 646.  In determining whether summary judgment is appropriate, facts and inferences from the record are viewed in the light most favorable to the non-moving

4

party.  *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009); *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1374 (11th Cir. 1996).

The movant bears the initial responsibility of informing the Court of the basis for its motion, and the particular parts of the record demonstrating the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once the movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, "the non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex*, 477 U.S. at 322).  Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts suggesting that a reasonable jury could find in its favor.  *Shiver*, 549 F.3d at 1343.  If the non-moving party fails to make a sufficient showing on an essential element of the case, or proffers only conclusory allegations, conjecture, or evidence that is merely colorable and not significantly probative, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 322.

As subject-matter jurisdiction in the instant action is premised on diversity grounds, the Court must determine the law applicable to this matter by looking to Florida's choice-of-law rules.  *Adolfo House Distributing Corp. v. Travelers Prop. and Cas. Ins. Co.*, 165 F. Supp. 2d 1332, 1335 (S.D. Fla. 2001) (citing *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997); *Bituminous Cas. Corp. v. Advanced Adhesive Tech., Inc.*, 73 F.3d 335, 337 (11th Cir. 1996)).  The Florida Supreme Court has long adhered to the rule of *lex loci contractus* (*i.e.* law of the place where the contract is made).  *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006).  That rule, as applied to insurance contracts, "provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage."  *Id.* (citing *Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988)).  Applying that rule, the substantive law of Florida governs the rights and liabilities of the parties in the instant action.

## III.   ANALYSIS

There are three issues before the Court.  The first issue is whether Oriole Gardens failed to comply with its post-loss obligations of submitting to an EUO, produce and disclose all relevant documentation to Independence, and giving prompt notice of the hurricane damage and loss to Independence.  Second, the Court must ascertain whether certain damage items claimed by Oriole Gardens are excluded from the current litigation by falling within a specific exclusion in the Policy.  The third issue before the Court is whether the instant action is barred by the applicable statute of limitations.  Because each of these post-loss obligations is a condition precedent, any material violation would preclude recovery.  As these issues require an examination of the relevant Policy language, the Court is guided by the well-established principles of insurance contract interpretation.

In Florida, the obligations of parties to an insurance contract are determined by the policy language at issue in the particular case.  Florida law provides that  "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto."  Fla. Stat. § 627.419(1); *accord Haenal v. U.S. Fid. & Guar. Co. of Baltimore, Md.*, 88 So. 2d 888, 889 (Fla. 1956) (internal citation omitted); *Prudential Prop. and Cas. Ins. Co. v. Bonnema*, 601 So. 2d 269, 271 (Fla. 5th DCA 1992).  An insurance policy should receive a construction that is reasonable and just, and not one that would reach a strained or absurd result.  *El-Ad Enclave at Miramar Condominium Ass'n, Inc. v. Mt. Hawley Ins. Co.*, 752 F. Supp. 2d 1282, 1288 (S.D. Fla. 2010) (citing *Siegle v. Progressive Consumers Ins.*, 819 So. 2d 732, 736 (Fla. 2002)).  A policy should also be construed to ascertain and give effect to the intentions of the contracting parties, as evidenced first and foremost by the language of the contract.  Any ambiguous provision in an insurance contract—one that is subject to more than one interpretation—is to be interpreted liberally in favor of providing coverage to the insured, and strictly against the insurer or drafter of the policy.  *Sphinx Int'l Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1228 (11th Cir. 2005); *Fla. Gaming Corp. v. Affiliated FM Ins. Co.*, 502 F. Supp. 2d 1257, 1261 (S.D. Fla. 2007) (citing *Stuyvesant Ins. Co. v. Butler*, 314 So. 2d 567, 571 (Fla. 1975)); *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998).  However, where no ambiguity exists, the policy shall be construed according to its plain language as bargained for by the parties.  *Auto-Owners Ins. Co. v. Anderson*,

6

756 So. 2d 29, 33 (Fla. 2000).   Taking these principles of construction into account, the Court addresses the parties' arguments below.

### A.        Compliance with Post-Loss Obligations

Independence argues that Oriole Gardens is barred from recovering under the Policy because it failed to comply with several of its post-loss obligations.   Specifically, Independence asserts that Oriole Gardens failed to (1) produce a knowledgeable representative for an EUO, (2) produce and disclose numerous documents as requested, and (3) provide prompt notice of the supplemental claim.   The Policy expressly conditions recovery on compliance with these obligations, stating "No one may bring a legal action against us under this Coverage Part unless . . . [t]here has been full compliance with all of the terms of this Coverage Part."   Def. Mot. for Summ. J., Ex. A (D.E. # 56-1), at 38 ("Policy").   Failure on the part of Oriole Gardens to reasonably comply with any of these conditions precedent is a material breach of the Policy that relieves Independence from any further payment obligation.   *See, e.g., Edwards v. State Farm Fla. Ins. Co.*, 64 So. 3d 730, 732 (Fla. 3d DCA 2011) (noting that submitting to an EUO and disclosing documents are conditions precedent to recovery); *Starling v. Allstate Floridian Ins. Co.*, 956 So. 2d 511, 513 (Fla. 5th DCA 2007) (holding that failure to timely complete a sworn proof of loss form is a condition precedent to bringing a lawsuit); *Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 785 (Fla. 3d. DCA 1981) ("The failure of an insured to give a timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy.").

"[W]hen evaluating an insurer's rights to investigation [sic] of a claim, the insurer's rights tend to be measured by 'reasonableness,' with the courts attempting to balance the insurer's legitimate interest in ascertaining the validity and extent of the claim against the insured's . . . rights to both privacy and prompt payment of sums due under the terms of the contract." *Fla. Gaming*, 502 F. Supp. 2d at 1261 (internal citations omitted).   Florida courts have held that "where the 'insured cooperates to some degree or provides an explanation as to its noncompliance, a fact question is presented' regarding the necessity or sufficiency of compliance." *Sunshine State Ins. Co. v. Corridori*, 28 So. 3d 129, 131 (Fla. 4th DCA 2010) (quoting *Haiman v. Fed. Ins. Co.*, 798 So. 2d 811, 812 (Fla. 4th DCA 2001)).   *Accord El-Ad Enclave*, 752 F. Supp. 2d at 1286-87 (applying Florida law); *Citizens Prop. Ins. Corp. v.*

*Gutierrez*, 59 So. 3d 177, 178-79 (Fla. 3d DCA 2011); *Schnagel v. State Farm Mut. Auto. Ins. Co.*, 843 So. 2d 1037, 1038 (Fla. 4th DCA 2003). The determination of whether compliance with a policy term is "necessary" or "sufficient" is a question of fact. *Corridori*, 28 So. 3d at 131. In light of the record, and viewing the facts in a light most favorable to the non-moving party, there exist such questions of fact over Oriole Gardens' compliance with (1) its obligation to submit to an EUO, (2) its obligation to disclose and produce documents, and (3) its obligation to provide prompt notice of the loss.

*1.      Oriole Gardens' Obligation to Submit to an EUO*

As its thirteenth, fourteenth, and fifteenth affirmative defenses, Independence argues that Oriole Gardens failed to comply with its post-loss obligations, including submitting to an EUO pursuant to the following Policy provision:

> **3. Duties in the Event of Loss or Damage**
> . . .
> b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including and insured's books and records.

Policy, at 31-32 (emphasis in original). Specifically, Independence argues that Oriole Gardens violated this provision by failing to produce a knowledgeable person for an EUO.

Independence initially requested that Oriole Gardens provide a representative for an EUO regarding nine areas of inquiry on April 2, 2010. Apr. 2, 2010 Letter (D.E. # 56-8), 1-3. On July 1, 2010, Oriole Gardens' public adjusters—Rommel Rodriguez and Bob Cook—submitted to EUOs to testify as to the alleged damages caused by Hurricane Wilma. Independence informed Oriole Gardens that because their "estimate consists of approximately 1,700 pages, we [Independence] were unable to question either Mr. Rodriguez or Mr. Cook about the estimate at the time of the examination under oath." July 9, 2010 Letter, at 2. Independence also informed Oriole Gardens that neither Mr. Rodriguez nor Mr. Cook had knowledge in certain areas of inquiry, such as the maintenance or repairs of the buildings over the past ten years. *Id*. at 3.

Oriole Gardens' current Board President, David Wagoner, subsequently submitted to an EUO on August 4, 2010. Mr. Wagoner answered numerous questions including how Oriole Gardens documented its activities, the condo association's business processes, and his personal

observations of the condition of the property after the hurricane.   However, Mr. Wagoner admittedly did not have knowledge relating to certain lines of inquiry by Independence, such as the physical condition of the property prior to the hurricane, or other information prior to his election to the Board in 2008.   Wagoner EUO (D.E. # 56-16), at 39-46, 53.   Despite Mr. Wagoner's testimony, Independence renewed its request for an additional EUO on multiple occasions because he did not have such personal knowledge.   *See* Sept. 15, 2010 Letter (D.E. # 56-17), at 7.

Independence contends that Mr. Wagoner's inability to answer all questions constitutes a breach of Oriole Gardens' EUO obligation.   "'Florida law is clear that while a total failure to comply with policy provisions made a prerequisite to suit under the policy may constitute a breach precluding recovery from the insurer as a matter of law, if the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by a jury.'"   *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1333, 1340 (S.D. Fla. 2009) (quoting *Horizons Condominium Ass'n, Inc. v. QBE Ins. Corp.*, No. 06-cv-418-Orl-19JGG, 2007 WL 294230, at *4 (M.D. Fla. Jan. 29, 2007)).   *See also Paulucci v. Liberty Mutual Fire Insurance Co.*, 190 F. Supp. 2d 1312, 1325-27 (M.D. Fla. 2002) (finding that although an examinee could not answer all of the questions, there was no indication that he was not the most knowledgeable person to submit to an EUO).

The record indicates that Oriole Gardens did cooperate to some substantial degree—if not entirely—with its obligation to submit to an EUO.   Oriole Gardens produced for examination its experts, public adjusters Rommel Rodriguez and Bob Cook, in addition to its current Board President David Wagoner.   The evidence shows that, prior to becoming Board President, Mr. Wagoner served as Oriole Gardens' liaison to deal with all issues relating to the insurance claim, had worked with the Oriole Gardens' board from the commencement of the litigation, and was the person primarily responsible for handling the claim.   *See* Malone Depo. (D.E. # 74-1), at 54, 64-65, 67, 74-75, 79.   Oriole Gardens has also submitted evidence that Max Pincus, the Board President during Hurricane Wilma, and the person who served in that position for 22 years, is unable to submit for an EUO due to his age and illness.   Wagoner EUO, at 40; Wagoner Depo. (D.E. # 65-3), at 102-03; Malone Depo., at 9, 14-15.   Because the record demonstrates that Oriole Gardens did comply, at least to some substantial degree, with its EUO obligation, a question of fact exists for a jury's determination.   Independence is therefore not entitled to

summary judgment on the basis that Oriole Gardens failed to comply with its obligation to submit to an EUO.

### 2.    *Oriole Gardens' Obligation to Disclose and Produce Documents*

Independence also asserts that Oriole Gardens failed to disclose or produce numerous documents per its multiple requests.  The Policy specifically states:

> **3. Duties in the Event of Loss or Damage**
> a.  You must see that the following are done in the event of loss or damage to Covered Property:
> . . .
> (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.
> Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit to make copies from your books and records.

Policy, at 31-32 (emphasis in original).

Independence initially requested all documentation from Oriole Gardens on March 12, 2010.  Mar. 12, 2010 Letter (D.E. # 56-7), at 1-7.  On July 9, 2010, Independence acknowledged receipt of numerous documents from Oriole Gardens.[3]  During his EUO, Mr. Wagoner stated that Oriole Gardens had no objection to Independence conducting a document inspection, or questioning its property management company.  Wagoner EUO, at 16, 19-20, 73-75.  Despite acknowledging receipt of numerous documents, Independence continued to renew its request for additional documentation.

---

[3] Independence acknowledged receipt of: various invoices and receipts from Advanced Roofing, Inc., Columbia Sign, Inc., Albertson Painting and Waterproofing, Gold Coast Glass Corp., Southcoast Glass, Bee Line Screen and Window, Clock Plumbing, Inc., X-Pert Awning Company, Complete Systems Contracting, Inc., CSC Commercial Systems Contracting, Inc., G&G Services, Con Tech Building Renovation & Restoration, The Home Depot, Complete Property Maintenance, Inc., Broward Pump & Supply Company, Brad's Bedding Plants, Inc., ACE Hardware, Mr. Kevin Smith, Medallion Plant, Nu Turf, R&H Lighting & Supply, Inc., D.W. Concrete Products, Cypress Doors & Locksmith, Inc., Sign A Rama, GAC, Rice Pump & Motor Repair, Inc., Watts New Electric, Dieter's Carpet Cleaning, Servi-Tec Office Systems, Sears Home Central, and Mr. Pedro Sarmiento; Executive Board Meeting Minutes for various times between 1998-2007; various financial statements for 2005-2007; various photographs following a storm; and permit receipts from the City of Margate.  *See* July 9, 2010 Letter, at 3-5.

As with its obligation to submit to an EUO, there exists a question of fact whether Oriole Gardens has substantially complied with its obligation to disclose documents.  Independence specifically alleges that Oriole Gardens did not provide financial ledgers for examination.  On December 1, 2010, Independence informed Oriole Gardens that it had not received additional documentation that Oriole Gardens' attorneys had represented was forthcoming.  *See* Dec. 1, 2010 Letter (D.E. # 56-21), at 1 (this letter "follow[s] up our November 15, 2010 telephone conference wherein you advised that you would be providing our office with financial and condominium documents . . . [t]o date we have not received any such documentation").  Moreover, Mr. Wagoner indicated that there may be outstanding documentation that was not provided to Independence.[4]   Yet, the record does not indicate what specific documents are outstanding, or whether they are relevant or necessary for Independence to investigate Oriole Gardens' claim.  Because Oriole Gardens has again complied to a certain degree with its obligation to produce and disclose documentation, there remains a question of fact for a jury's determination as to whether Oriole Gardens satisfied this obligation.  *Vision I*, 674 F. Supp. 2d at 1340; *El-Ad Enclave*, 752 F. Supp. 2d at 1286-87; *Corridori*, 28 So. 3d at 131; *Gutierrez*, 59 So. 3d at 178-79.  Independence is therefore not entitled to summary judgment on the basis that Oriole Gardens failed to comply with its obligation to produce and disclose documents.

### 3.   *Oriole Gardens' Obligation to Provide Prompt Notice of Loss or Damage*

In its Supplemental Motion for Summary Judgment, Independence seeks summary judgment on its eight and ninth affirmative defenses; that Oriole Gardens failed to provide prompt notice of the loss and a description of how the loss occurred.  The Policy provides:

---

[4] The following exchange occurred in Mr. Wagoner's deposition:

> Q:    Now during your initial examination under oath, you advised that you would have to go back through some of the financial ledgers to determine what roofing company made repairs to the property; is that correct?
>
> A:    Absolutely.
>
> Q:    Since that time, did you go back through any of the general financial ledgers to determine what roof repairs were made following Wilma?
>
> A:    No.

Wagoner Depo., at 201-02.

> **3. Duties in the Event of Loss or Damage**
> a.  You must see that the following are done in the event of
>     loss or damage to Covered Property:
>     . . .
>     (2) Give us prompt notice of the loss or damage.  Include a
>         description of the property involved.
>     (3) As soon a possible, give is a description of how, when
>         and where the loss or damage occurred.

Policy, at 31 (emphasis in original).

Such a notice provision, like the obligations to submit to an EUO and disclose documents, provides an insurer an opportunity to investigate damages covered under a policy. *Waldrep*, 400 So. 2d at 785.  The failure of an insured to comply with such a provision may bar recovery, but only if the insurer is actually prejudiced by such late notice.  *Tiedtke v. Fid. & Cas. Co. of New York*, 222 So. 2d 206, 209 (Fla. 1969).  Florida law provides that failure to give timely notice creates a rebuttable presumption of prejudice to an insurer.  *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985).  An insured can, however, rebut that presumption by introducing evidence tending to show that the insurer was in fact not prejudiced by the late notice of the claim.  *Id.*  The determinations of (1) "whether the notice provision was complied with" and (2) "what is a reasonable time under the surrounding circumstances" are both questions of fact.  *Vision I*, 674 F. Supp. 2d at 1338 (quoting *Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co.*, No. 07-cv-326-Orl-DAB, 2009 WL 1513400, at *6 (M.D. Fla. May 27, 2009)); *Waldrep*, 400 So. 2d at 785.  To prevail on a late notice defense on summary judgment, "a party must therefore show that there are no genuine issues of material fact regarding (1) what the Policy required with respect to notice, (2) when notice was provided, within the meaning of the Policy and Florida law, (3) whether notice was timely, and (4) whether prejudice exists, either by operation of the unrebutted presumption or otherwise."  *Vision I*, 674 F. Supp. 2d at 1338 (quoting *Bray*, 2009 WL 1513400, at *6).  Independence has not met this burden.

The clause requiring Oriole Gardens to "provide prompt notice" of the loss, and provide a description of the damage "as soon as possible" contains two ambiguities that preclude a grant of summary judgment.  The first ambiguity involves whether Oriole Gardens' duty to notify pertains only to the initial claim, or also imposes a time limit on supplementing its claim. Independence concedes that Oriole Gardens provided initial notice of the loss within a reasonable time after Hurricane Wilma.  However, Independence argues that the duty to provide

12

prompt notice of loss was violated because Oriole Gardens waited four years to request that the claim be reevaluated based on a revised claim submission. The Policy contains no provision delineating when an insured may submit a revised proof of loss, or contest a claim determination. "Where the terms of the written instrument are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the parties; intent which cannot properly resolved by summary judgment." *Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc.*, 513 So. 2d 218, 219 (Fla. 1st DCA 1987) (citing *Langer v. Charles A. Binger, Inc.*, 503 So. 2d 1362, 1363 (Fla. 3d DCA 1987)). The notice clause here is subject to two different interpretations; such an ambiguity necessarily precludes summary judgment on Independence's eight and ninth affirmative defenses.

Second, this Court previously held that whether an insured satisfies a requirement to provide "prompt notice" is a question of fact for a jury that precludes summary judgment. *Vision I*, 674 F. Supp. 2d at 1338. Florida courts have similarly held that the term "as soon as practicable," as used in the notice provision of an insurance policy, means that "notice is to be given within a reasonable time in view of all the facts and circumstances of each particular case." *Bray*, 2009 WL 1513400, at *7 (citing *Morton v. Indemnity Ins. Co. of North America*, 137 So. 2d 618 (Fla. 2d DCA 1962); *State Farm Mut. Auto. Ins. Co. v. Ranson*, 121 So. 2d 175 (Fla. 2d DCA 1960)). What is "reasonable" depends on the surrounding circumstances of the individual case, and is ordinarily a question of fact. *Renuart-Bailey-Cheely Lumber & Supply Co. v. Phoenix of Hartford Ins. Co.*, 474 F.2d 555, 557 (5th Cir. 1972) (citing *Hendry v. Grange Mutual Casualty Co.*, 372 F.2d 222 (5th Cir. 1967));[5] *Banta Prop., Inc. v. Arch Specialty Ins. Co.*, No. 10-61485-CIV, 2011 WL 5928578, at *3 (S.D. Fla. Nov. 23, 2011) (citing *Employers Cas. Co. v. Vargas*, 159 So. 2d 875, 877 (Fla. 2d DCA 1974); *Laster v. U.S. Fid. & Guar., Co*., 293 So. 2d 83, 86 (Fla. 3d DCA 1974)). Because a question of fact exists as to whether Oriole Gardens provided notice within a reasonable time light of the circumstances of the case, summary judgment is precluded on Independence's eight and ninth affirmative defenses.[6]

---

[5] The decisions of the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981 are binding as precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[6] The Court notes as an aside that the facts in the instant action are very similar to those presented in *Chimerakis v. Sentry Ins. Mut. Co.*, 804 So. 2d 476 (Fla. 3d DCA 2001). In *Chimerakis* the plaintiff notified her insurance company of additional losses five years after the

Independence cites to *Kroener v. FIGA*, 63 So. 3d 914 (Fla. 4th DCA 2011); *Watson v. Allstate Lloyds Insurance Co.*, No. Civ.A. H-03-5805, 2005 WL 1607452 (S.D. Tex. July 5, 2005) to argue that there is a *per se* timeliness bar by which an insured must notice its claim to an insurer.  In *Kroener*, an insured filed an initial claim for damages caused by Hurricane Wilma more than two years after suffering the loss.  Without considering whether the insurer suffered prejudice, the state court ruled that notice was untimely as a matter of law.  *Kroener*, 63 So. 3d at 916. Similarly in *Watson*, the court held that an insured who waited a year to notify an insurer of a claim failed to provide prompt notice as a matter of Texas law.  *Watson*, 2005 WL 1607452, *8-9 (citing *Nat'l Union Fire Ins. Co. v. Brown*, 441 S.W.2d 592, 595 (Tex. Civ. App. 1969); *Klein v. Century Lloyds*, 275 S.W.2d 95, 97 (Tex. 1955)).  Plaintiffs, reliance on *Kroener* and *Watson* are inapposite for two reasons.

First, this Court expressly rejected this argument; that Florida law imposes a *per se* timeliness bar for providing notice of a claim.  In *Banta Properties v. Arch Specialty Insurance Co.*, the defendant argued that in light of *Kroener*, Florida law imposes a strict timeframe by which an insured must provide notice of a claim irrespective of whether an insurer was prejudiced by the late notice.  This Court expressly rejected this argument, holding that "there is no *per se* timeliness bar for filing notice of a claim, and that notice must be considered under the circumstances."  *Banta Prop.*, 2011 WL 5928578, at *3 (citing *Renuart*, 474 F.2d at 557; *Vargas*, 159 So. 2d at 877; *Laster*, 293 So. 2d at 86).

Second, and notwithstanding this Court previous rejection of the exact argument advanced by Independence, both *Kroener* and *Watson* are factually distinguishable from the instant action.  Both *Kroener* and *Watson* involved substantial delays by an insured to submit an initial claim.  Here, Independence concedes that Oriole Gardens submitted its initial claim within a reasonable time after Hurricane Wilma.  What is in issue here is whether the Policy's

---

initial claim, and sought an appraisal of the damages.  The court did not express any time-bar concern over the five year gap between the initial claim and the revised one.  Moreover, the court reasoned that plaintiff's claims were not time-barred because she had not yet performed the conditions precedent to appraisal.  *Id.* at 480.  Similarly here, as was more fully discussed at the February 29, 2012 hearing, Oriole Gardens' claim is not time-barred as Independence continued to evaluate the revised claim and requested compliance with the Policy's conditions precedent in 2010.  Tellingly, through the 13 months in 2009 and 2010 during which Independence was evaluating Oriole Gardens' claim, Independence never expressed any concern or objection about late notice.

requirement of providing prompt notice extends to supplementing a previously-submitted claim. The Court finds that the Policy language on this point is ambiguous, and neither *Kroener* nor *Watson* helps resolve that ambiguity. Independence cannot therefore establish that there are no genuine issues of material fact regarding what the Policy required with respect to notice, when notice was provided within the meaning of the Policy, and whether the notice was timely. Moreover, the record clearly indicates that, as a result of the initial claim, Independence was able to, and did in fact, fully investigate and evaluate the nature of the hurricane damage sustained by Oriole Gardens. Def. Supp. Mot. Summ. J., at 11 (admitting that it made a "full and thorough inspection" of Oriole Gardens' property following Hurricane Wilma). Thus, the Court cannot, as a matter of law, find that Independence was prejudiced.

**B.      Independence is not entitled to Summary Judgment for Items falling within the Policy's Exclusions**

Independence also seeks summary judgment on its fourth, sixth, and seventh affirmative defenses, arguing that Oriole Gardens may not recover for damage to property that falls within any of the Policy's exclusions. The Policy provides in relevant part:

> **2.   Property Not Covered**
> Covered Property does not include:
> d.   Bridges, roadways, walks, patios or other paved surfaces;
> . . .
> q.   Exterior Paint and Waterproofing
> We will not pay for loss or damage to paint or waterproofing material applied to the exterior of Buildings. We will not include the value of paint and waterproofing material to determine the value of Covered Property when applying the Coinsurance Condition.
> . . .
> z.   Awnings and canopies whether, attached or not attached to a building or structure, and including awnings and canopies over gas pumps.

Policy, at 20, 23 (emphasis in original).

Oriole Gardens acknowledges that certain categories of the damage items about which Independence complains are excluded from coverage. However, Oriole Gardens asserts that, to the extend that any damage items that fall within the Policy's exclusions, and were listed in Able Adjusters' 2010 second revised estimate, they have been excluded by its expert Rommel Este in

his damage estimate.   However, Independence contends that the same non-covered damage items are still included in Mr. Este's estimate.[7]

At the hearing, the Court determined that summary judgment was not the proper vehicle to properly resolve these coverage issues.  The Court instructed the parties to confer over exactly what damage items are in dispute, to attempt to resolve them, and failing resolution, to file appropriate motions *in liminie* setting forth the legal basis by which the Court should include or exclude disputed damage items.  The Court will rule on these motions *in liminie* in due course. Accordingly, the Court denies without prejudice summary judgment as to Independence's fourth, sixth, and seventh affirmative defenses.

### C. The Instant Action is not Time-Barred by the Applicable Statute of Limitations

Independence argues that it is entitled to summary judgment on its second affirmative defense: Oriole Gardens failed to bring this action within the applicable statute of limitations. Specifically, Independence argues that the statute of limitations period applicable to Oriole Gardens' breach of contract claim ran from Independence's December 9, 2005 letter, when it first informed Oriole Gardens that its investigation revealed that the loss fell below the deductible.  Because the instant action was filed on January 10, 2011—five years and one month after the December 9, 2005 letter—Independence argues that Oriole Gardens' claim is barred by the statute of limitations.[8]

---

[7] Mr. Este admitted that he did not take the Policy exclusions into account when preparing his estimate.  *See* Este Depo., at 64-65.  The relevant portion of Mr. Este's Deposition reads:

> Q.   Now, did you ever receive a copy of the policy in this case?
> A.   No.
> Q.   Did you ever review any of the policy language to determine whether any items in your estimate were not covered?
> A.   No.
> Q.   So your estimate, is it a correct assumption that everything in here is in there regardless of whether or not it is covered under the policy?
> Mr. Feltman:   Object to form.
> A.   Right.

Este Depo., at 64-65.

[8] The December 9, 2005 letter states in relevant part:

Fla. Stat. § 95.11(2)(b) provides that "[a] legal or equitable action on a contract, obligation, or liability founded on a written instrument" must be filed within five years of the cause of action accruing.[9]  "A cause of action accrues when the last element constituting the cause of action occurs."  Fla. Stat. § 95.031(1).  *See State Farm Mut. Auto. Ins. Co. v. Lee*, 678 So. 2d 818, 821 (Fla. 1996) ("A cause of action cannot be said to have accrued, within the meaning of the statute of limitations, until an action may be brought." (citing *Loewer v. New York Life Ins. Co.*, 773 F. Supp. 1518, 1521 (M.D. Fla. 1991))).  In the insurance context, a cause of action for breach of contract accrues at the time there is a breach of the policy.  *Dinerstein v. Paul Revere Life Ins. Co.*, 173 F.3d 826, 827-28 (11th Cir. 1999) (citing *Lee*, 678 So. 2d at 821); *Levy v. Travelers Insurance Co.*, 580 So. 2d 190, 191 (Fla. 4th DCA 1991).

To maintain a cause of action for breach of contract, a claimant must show (1) a valid contract; (2) a material breach; and (3) damages.  *Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331, 1341 (S.D. Fla. 2011) (citing *Merin Hunter Codman, Inc. v. Wackenhut Corrs. Corp.*, 941 So. 2d 396, 398 (Fla. 4th DCA 2006)).  A "material breach" of a contract is a failure, without legal excuse, to perform any promise or obligation or that goes "to the essence of the contract."  *Covelli Family, LP v. ABG5, LLC*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008) (quoting

---

Per the attached estimate, the damage to each building is below the deductible. As the damage is below the deductible, no payment can be made under this policy.  The decision is based on our review of all information currently in our possession.  If you believe there any facts that we have not considered, they should be brought to our immediate attention.  We will thoroughly [review] any new information you provide which may have a bearing on your loss.

We bring the following policy condition to your attention . . . No one may bring legal action against us under this Coverage Part unless: 1. There has been full compliance with all of the terms of this Coverage Part . . . .

Dec. 9, 2005 Letter (D.E. # 56-3), at 1-2.

[9] The Policy provides that "Legal action against [the insurer] involving direct physical loss or damage to property must be brought within 5 years from the date the loss occurs."  Policy, at 40. Under Florida law, "[a]ny provision in a contract fixing the period of time within which an action arising out of the contract may be begun at a time less than that provided by the applicable statute of limitations is void."  Fla. Stat § 95.03.  The clause is therefore invalid as it shortens the limitations period.  *See Banta Prop.*, 2011 WL 5928578, at *3; *Palma Vista Condominium Ass'n of Hillsborough Co., Inc. v.  Nationwide Mut. Fire Ins. Co., Inc.*, No. 09-CV-155-T-27EAJ, 2010 WL 4274747, at *6 (M.D. Fla. Oct. 7, 2010).

*Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So. 2d 853, 857 (Fla. 4th DCA 1972)).  However, the evidence clearly demonstrates that Oriole Gardens did not have a cause of action for breach of contract in 2005.

As discussed above, the Court held a hearing on the statute of limitations issue, and based on a through review of the record, including the December 9, 2005 letter and numerous other letters between the parties after Oriole Gardens submitted its revised damage claim, made several extensive findings of fact and conclusions of law, which are adopted here by reference.  The Court held that the statute of limitations does not bar the instant action for three reasons.  First, there was no specific denial of Oriole Gardens' initial claim in the December 9, 2005 letter.  In its reply memorandum and answer to interrogatories, Independence admitted that it did not specifically "deny" the claim in 2005.  Reply (D.E. # 84), at 4; Interrog. (D.E. # 98-2), at 3.  Additionally, in its 2005 letter, Independence clearly invited the submission of additional information regarding the claim when it informed Oriole Gardens that its loss fell below the deductible, indicating that the claim was open and ongoing.  Second, Independence's subsequent correspondence and actions regarding Oriole Gardens' claim, as extensively discussed by the Court at the hearing, also clearly indicates that the claim was open and ongoing.  For example, Independence rejected Oriole Gardens' proof of loss as premature because Independence was still evaluating the claim, and then requested additional information as part of this evaluation.  Third, the Policy conditions any legal action on compliance with several conditions precedent including, *inter alia*, the submission of a sworn proof of loss at Independence's request.  As none of these conditions precedent were completed in 2005, Oriole Gardens did not have a cause of action at that time.

In addition to the above, even if the Court found that Independence effectively denied Oriole Gardens' claim in the December 9, 2005 letter, which it did not, the Court notes that during the five years after that letter was delivered, Oriole Gardens made a demand that Independence engage in the appraisal process as provided by the Policy.  Independence refused the demand, asserting that appraisal was premature because no claim determination had been made.  Thus, at that point, either Independence was correct, that it did not have to engage in appraisal because it was premature and no cause of action had accrued, or Independence breached its obligation to go into in the appraisal process—a breach that occurred within the statute of limitations.  As such, for the reasons stated at the hearing and here, the Court finds that

the instant action is not barred by the statute of limitations, and Independence is not entitled to summary judgment on its second affirmative defense.

## IV.     CONCLUSION

For the reasons set forth above and stated in open court, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment (D.E. # 57) is DENIED, and Plaintiff's Supplemental Motion for Summary Judgment (D.E. # 90) is DENIED.

ORDERED AND DONE, in Chambers, Miami, Florida, March 6, 2012.

Paul C. Huck
United States District Judge

**Copies furnished to:**
Counsel of record

19